Turley, special J.,
delivered the opinion of the court.
It appears from the record and evidence in this case, that the complainant was the agent of the State Bank of Tennessee for the county of Carroll, and so remained until the passage of the law which appropriated the moneys and debts due said bank to the use of common schools, and appointing county school commissioners for the management thereof; that during the continuance of such agency, he borrowed of the bank, out of its funds appropriated to the use of Carroll county, the sum of five hundred dollars ; that at the expiration of his agency, he handed over to the commissioners of the common school fund for Carroll county, the funds, papers, vouchers, &c., of his agency, of which his note for the five hundred dollars thus previously borrowed was apart; that this note afterwards came into the hands of Scott Terry, su *573 perintendent of public instruction, who under the provisions of the law in such cases provided, obtained judgment thereon against him for the sum of said five hundred dollars principal debt, and the further sum of two hundred and forty-seven dollars, seventy cents, interest thereon, on the 8th day of January.
On the 20th day of September, 1842, complainant filed his bill in equity enjoining the collection of said judgment, upon the alleged ground that he is entitled to certain credits upon said demand, for services rendered the common school commissioners of Carroll county as their clerk, for services rendered as their agent in travelling to and from Nashville on several occasions upon business connected with their said commission, and for other sums of money paid by debtors of the complainant for and on his behalf upon said note to the commissioners, before the judgment was rendered, and which were not allowed to him upon the trial, because the court held that the note being under seal, the defense could not be made. To this bill there was a demurrer, which was sustained by the chancellor, but which judgment was reversed upon appeal to the supreme court of the State, at Jackson. Upon which the case was remanded to the chancery court ot Carroll county, sitting at Huntington, for further proceeding.
Afterwards such steps were taken in the court as ended in a dissolution of the injunction, and a decree against the complainant in the month of Feb., 1843. Both the judgment and the decree in chancery were rendered in favor of the Bank of Tennessee, the charter of which expired by limitation on the first day of January, 1843. Upon the dissolution of the injunction, the amount of the decree then given against the complainant was collected. But upon the final hearing of the case at the August term, 1850, of the chancery court at Huntington, the chancellor held that inasmuch as the decree in favor of the Bank, upon the dissolution of the injunction *574 was made after the expiration of the bank charter, it was a void decree, the corporation being defunct, and in consequence thereof ordered and directed that the amount collected upon the dissolution of the injunction, should be refunded to the complainant, from which there is an appeal to this court.
The question presented for our consideration now, is whether the expiration of the charter of the bank by limitation, pendente lite, under the circumstances attending the case, renders the decree upon the dissolution of the injunction against the complainant void. It is not to be denied, that as a general principle, the dissolution of a corporation by the expiration of its charter pendente lite, is an abatement of the suit, which cannot be renewed, unless provision is made for such contingency in the charter; but the question here is whether this case is not an exception to this general principle; the solution of which depends upon the construction of the different statutory and constitutional provisions made thereon in relation to the common school fund, and which we will proceed to examine.
When the agencies of the State Bank of Tennessee, appointed for the different counties of the State, to loan out the amount of money appropriated by the bank to them, were discontinued by the legislature, all the funds, vouchers, and evidences of debt, in the hands of the different agents, were directed to be handed over by them to the different common school commissioners of the counties for the use and benefit of common schools, and under this provision of law this complainant, as agent for the bank for Carroll county, handed over the note, the subject matter of this controversy, together with the other assets of his agency to the common school commissioners of the county of Carroll.
When the common school commissioners for the counties who had been appointed in succession to the different county agencies of the bank, were abolished by law, an agent was ap *575 pointed for each county, to close the concerns of the county common school commissioners, and finally, when by the act of 1831, ch. 23, these agencies were abolished by the estab lishment and incorporation of the board of commissioners of common schools fen1 the State of Tennessee, and a superintendent of public instruction appointed, it was ordered by the provisions of the 11th section of the statute, “that the moneys, notes, bonds, stocks, securities, and other property belonging to the State or common school fund, in the possession, or under the control of the agents appointed to close the concerns of the bank of the State, the county common school commissioners, and county bank agents, should on demand be delivered by the person or persons having possession of the same to the superintendent of public instruction, or to the authorized agent of common school commissioners ”
It was also provided by the 7th section of the act, that the board of common school commissioners, whenever they might deem it necessary, should appoint an agent in each county to report to the superintendent the name of each debtor in his county to the common school fund, the amount thereof, and the security, the date of its execution, and of its maturity; and by the 9th section, it is made the duty of the superintendent to furnish to each county agent a schedule of the amounts against the debtors to the school fund in his county, and to cause said agents to have the securities therefor renewed every six months, calling in ten per cent, on the amount at the first renewal, and twenty-five per cent, at each renewal thereafter, till the whole be paid in four equal semi-annual in-stalments.
The 11th section make it the duty of said superintendent to vest such money, as fast as collected, in Planters’ Bank stock.
We thus see that all the funds of every description, both in possession and in action, belonging to the bank of the State, and which had been originally placed in the hands of its agents *576 in the different counties of the State, upon a principle of equitable distribution for the use of the citizens, had before the act of 1831 been appropriated by legislative provisions to the exclusive use oí common schools in the State of Tennessee, and that by the act of 1831, ch. 23, the right to collect and appropriate this fund according to law was directly vested in the superintendent and board of common school commissioners for the State; and the 10 th section of Art. 11, of our constitution makes this fund perpetual and inalienable.
We have seen that it was under the provisions of the above referred to statutes, that the note of the complainant came into the hands of the superintendent of public instruction, and who by the authority thus vested in him, caused judgment thereon, for default of payment, to be rendered against complainant, as he was well warranted in doing. This judgment was necessarily rendered in the name of the bank, because when the debt was contracted with the bank, the money belonged to fhebank; and the note the evidence of the debt, was made payable to the bank, and was never renewed as it appears, after the fund was appropriated by the State to common schools. It then stands as a judgment, in the name of the bank, for the benefit of common schools, and is to be governed by the rules of law, as applicable to cases of judgments in favor of one individual for the use and benefit of another; the person, in whose name the suit is brought and the judgment rendered, being the nominal plaintiff, and the person for whose benefit it is brought, the actual.
When this judgment was rendered at law, the bank was in existence, but if it had been defunct, this would not have affected the claim of the representatives of the common school fund, because the fund had been assigned for such use by law, and the equitable right thereto at least was perfect. But when the defendant by his bill of injunction removes the case from a court of law into a court of chancery, upon well set- *577 tied chancery principles, the party interested in and actually owning the fund by equitable assignment, becomes the real party to the bill, and the nominal party at law is no longer necessary for the carrying on the suit, and his death can in no wise effect the interest of him who is the party really interested.
We therefore think that the expiration of the charter of the State bank pending the bill in chancery in this case, does not affect the right to this debt, vested by legislative assignment in the common school fund, and that the chancellor erred in holding that it did, and in decreeing that it having been collected, .should be refunded.
The decree will be therefore reversed; but inasmuch as no account has as yet been taken for the purpose of ascertaining the amount of actual indebtedness, on the part of complainant, let the case be referred to the clerk and master for that purpose.